# United States Court of Appeals
### For the Eighth Circuit

_____

No. 15-2885

_____

David Miller

*Plaintiff - Appellant*

v.

City of St. Paul; Thomas Smith, in his official capacity as Chief of Police for City of St. Paul Police Department; Patricia Englund, individually and in her official capacity as Patrol Commander for the City of St. Paul Police Department

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: March 17, 2016
Filed: May 23, 2016

_____

Before MURPHY, BEAM, and GRUENDER, Circuit Judges.

_____

MURPHY, Circuit Judge.

David Miller brought this action against the City of St. Paul, its police chief, and police officer Patricia Englund, alleging violations of his First Amendment right to engage in religious speech at the 2014 Irish Fair. Miller also sought a preliminary injunction to enjoin similar violations at future Irish Fairs. The district court denied

Miller's preliminary injunction motion and dismissed his complaint after concluding that he lacked standing to pursue his claims. Miller appeals. We affirm in part and reverse and remand in part.

I.

The Irish Fair of Minnesota (IFM) is a private nonprofit organization which organizes the annual Irish Fair, a three day event celebrating Irish culture. The fair takes place at Harriet Island Regional Park (Harriet Island), a public park in St. Paul, Minnesota. IFM obtains permits from the city allowing it to host the fair, which is open to the public free of charge. Harriet Island remains a public park during the fair.

The city's administrative regulations governing permits for the use of Harriet Island require a security plan to be submitted sixty days before an event. St. Paul patrol commander Patricia Englund drafted the security plan for the 2014 Irish Fair, which was implemented by off duty St. Paul police officers. The plan contained a list of "prohibited items" which included signs. In addition, IFM's policies and procedures limited solicitation by vendors and prohibited the distribution of "merchandise, promotional items or materials" at the fair.

Miller is an evangelical Christian who planned to share his religious views at the 2014 Irish Fair by carrying signs, distributing literature, open air preaching, and initiating conversations with passersby. On August 9, 2014 he and a few friends met outside the fair entrance, carrying signs and planning to express their shared religious views. Before they entered the fairgrounds, however, they were approached by an unidentified police officer and commander Englund. One of Miller's friends videotaped the following exchange.

Englund told the group that Harriet Island was IFM's property during the fair, that its permit allowed it to "make the rules for the property," and that their "signage,

all that stuff, it's just not welcome." Miller asked her whether she would arrest him if he displayed a banner on the fairgrounds, and she responded that she would confiscate it until after the fair. He then asked Englund if she would arrest him if he distributed religious literature, and she told him that she would "consult with [IFM] to see what their preference was." He also asked if Englund would arrest him if he started to open air preach, and she replied that she had not yet decided. Miller told Englund that her position "wouldn't hold up in court," and the group left to discuss how to proceed. They eventually departed without attempting to enter the fairgrounds.

Miller's attorney later wrote a letter to St. Paul officials, asserting that Englund had violated Miller's First Amendment rights and demanding nominal damages, attorney fees, and written assurance that the city would not prohibit Miller's religious expression at future Irish Fairs. In a written response, the city denied any wrongdoing, but it acknowledged that Miller could engage in protected speech and confirmed that it would ensure compliance with the law during future fairs. Not satisfied with this response, Miller filed a § 1983 suit against the city, its police chief, and Englund in both her official and individual capacities. His complaint alleged violations of his First Amendment and due process rights and requested nominal damages, attorney fees, and declaratory and injunctive relief. Specifically, Miller alleged that based on his conversation with Englund, he had concluded that IFM's permit allowed it to exercise "proprietary control" over speech at the 2014 Irish Fair, thereby facilitating an unconstitutional "heckler's veto" barring his religious speech. He later filed a motion for a preliminary injunction in the district court to enjoin similar abridgements of his religious expression at future Irish Fairs.

After a hearing, the district court denied the preliminary injunction and dismissed Miller's complaint for lack of jurisdiction, concluding that he lacked standing to pursue his claims. The court reasoned that Miller's expectations about how Englund may have responded to his religious speech, which were based on her

answers to "hypothetical questions," did not demonstrate a specific present harm because she never took any "overt action" to prevent his religious expression. The court further concluded that Miller had not shown a threat of specific future harm at subsequent Irish Fairs, emphasizing that St. Paul had assured him that he could engage in protected speech at those fairs. Miller appeals.

## II.

"We review a decision dismissing a complaint for lack of standing de novo, construing the allegations of the complaint, and the reasonable inferences drawn therefrom, most favorably to the plaintiff." Glickert v. Loop Trolley Transp. Dev. Dist., 792 F.3d 876, 880 (8th Cir. 2015) (internal quotation marks omitted). To demonstrate standing, a party must allege an "injury in fact, causation, and redressability." Mo. Roundtable for Life v. Carnahan, 676 F.3d 665, 672 (8th Cir. 2012). A party may allege an injury in fact "by showing that its First Amendment rights have been chilled by harm to reputation or threat of criminal prosecution."[1] Id. at 673. That party "must present more than allegations of a subjective chill," however, and must allege a "specific present objective harm or a threat of specific future harm" to establish standing. Eckles v. City of Corydon, 341 F.3d 762, 767 (8th Cir. 2003) (alterations and internal quotation marks omitted).

## A.

We first address whether Miller has standing to pursue his claims against the city, its police chief, and commander Englund in her official capacity based on Englund's alleged conduct at the 2014 Irish Fair. "A plaintiff who sues public employees in their official . . . capacities sues only the public employer and therefore

---

[1]Since Miller has abandoned his due process claims, we limit our analysis to his First Amendment claims.

must establish the municipality's liability for the alleged conduct." Kelly v. City of Omaha, Neb., 813 F.3d 1070, 1075 (8th Cir. 2016). Municipal liability under § 1983 cannot be based on respondeat superior, but instead must arise from "action pursuant to official municipal policy of some nature." Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 691 (1978). We conclude that Miller has not "asserted facts that affirmatively and plausibly suggest that [he was] indeed subject to a credible threat of prosecution" under St. Paul's policies for engaging in religious expression, as he must to establish standing. Zanders v. Swanson, 573 F.3d 591, 594 (8th Cir. 2009).

Miller's complaint alleges that St. Paul's permitting scheme gave IFM "proprietary control" over speech at the 2014 Irish Fair, subjecting him to criminal prosecution if he engaged in religious expression and chilling his exercise of First Amendment rights. We have found nothing in the record, however, showing that the IFM's permits or the city's permitting regulations would subject Miller to prosecution for engaging in his desired religious expression. See Zanders, 573 F.3d at 594. Those regulations neither give permit holders control over speech content nor threaten criminal penalties against those engaging in religious speech in permitted areas.[2] Cf. McGlone v. Bell, 681 F.3d 718, 730–31 (6th Cir. 2012). Indeed, the city and officers acknowledged below that Englund's statements to Miller did "not accurately reflect the City's laws or policies." Her actions thus could "not confer standing on Mr. [Miller] to challenge whether the [permitting policies] violate the First Amendment . . . because he has not shown the requisite intention to bring himself within the scope of" any conduct proscribed by those policies. Travis v. Park City Police Dep't, 277 F. App'x 829, 832 (10th Cir. 2008) (unpublished).

---

[2]In fact, the city's regulations governing reservations of public park space for a permit holder's exclusive use expressly preclude "the limitation of persons exercising their First Amendment rights."

On appeal, Miller apparently abandons his claims regarding the city's permitting policies and instead argues that the fair security plan prohibiting signs and IFM's policy barring literature distribution violated his First Amendment rights. Neither policy was mentioned in his complaint, however, and neither appears to represent an "official municipal policy" of the city. Monell, 436 U.S. at 691. While Miller points out that commander Englund was responsible for drafting the security plan—which he asserts incorporates IFM's policy—he has not alleged any facts showing that she was "responsible for establishing final government policy respecting such activity," a prerequisite to municipal liability under § 1983. Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986). Nor has he alleged any "facts showing that policymaking officials had notice of or authorized [Englund]'s conduct" which could give rise to municipal liability. Kelly, 813 F.3d at 1076. We therefore affirm the dismissal of his claims against the city, its police chief, and Englund in her official capacity.

We also conclude, however, that Miller has standing to pursue his claim against commander Englund in her individual capacity. Englund argues that she did not subject Miller to an objective threat of harm because there was no city policy restricting his expression and she did not take any "overt enforcement action" against him. We disagree. While there was no official policy restricting Miller's expression, § 1983 imposes liability on an official who "oversteps [her] authority and misuses power." Magee v. Trustees of Hamline Univ., Minn., 747 F.3d 532, 535 (8th Cir. 2014). Further, we do not believe that Englund had to take any actions more "overt" than those alleged for Miller to bring a First Amendment claim against her. Englund allegedly threatened to confiscate any banners Miller displayed, creating a concrete threat of injury regardless of whether she also threatened to arrest him. See Eckles, 341 F.3d at 768. Miller therefore has standing to pursue his claim against commander

Englund in her individual capacity, and we reverse and remand for further proceedings.[3]

## B.

We finally address whether Miller has standing to seek an injunction prohibiting restrictions on his religious expression at future Irish Fairs. Our court has recognized that "a threatened injury must be certainly impending to constitute injury in fact," and that "allegations of future injury must be particular and concrete." Johnson v. Missouri, 142 F.3d 1087, 1089 (8th Cir. 1998) (alterations and internal quotation marks omitted). Here, Miller contends that St. Paul's refusal to acknowledge any wrongdoing during the 2014 Irish Fair shows that it maintains an unconstitutional policy that it may invoke to violate his rights in the future. We disagree.

As discussed above, Miller has not identified any official "law, ordinance, code provision, or permitting requirement or regulation . . . that portends the future violation of [his] rights." Teesdale v. City of Chicago, 690 F.3d 829, 836 (7th Cir. 2012). The city's denial of wrongdoing was in response to correspondence from his attorney, and its "litigating position, with nothing more, is insufficient to constitute an official policy" allowing his claims against the city to proceed. Id. at 837. In addition, the security plan and IFM policies that Miller challenges on appeal applied only to the 2014 Irish Fair, and St. Paul has confirmed that its officials will comply with the law during future fairs. Cf. Parks v. City of Columbus, 395 F.3d 643, 653 (6th Cir. 2005). Accordingly, we conclude that Miller's allegations are "too speculative to invoke the jurisdiction of an Art[icle] III court" because he has not shown a threat of specific future harm. Johnson, 142 F.3d at 1090. We therefore

---

[3]We express no view on the merits of Miller's claim, which the district court will resolve on remand.

affirm the denial of Miller's motion for a preliminary injunction and the dismissal of his claims based on future constitutional violations.

## III.

For these reasons we affirm the denial of Miller's motion for a preliminary injunction and the dismissal of his claims against St. Paul, its police chief, and commander Englund in her official capacity. We reverse the dismissal of his claim against Englund in her individual capacity, however, and remand for further proceedings not inconsistent with this opinion.

_____