# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 16-3242

———————————————

E.L., a minor, by La'Sheika White the Mother, legal guardian, and next friend of E.L.

*Plaintiff - Appellant*

v.

Voluntary Interdistrict Choice Corporation

*Defendant - Appellee*

———————————

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

———————————

Submitted: April 5, 2017
Filed: July 27, 2017

———————————

Before COLLOTON, BEAM, and BENTON, Circuit Judges.

———————————

BENTON, Circuit Judge.

On behalf of E.L., her minor son, La'Shieka White sued the Voluntary Interdistrict Choice Corporation (VICC), alleging its race-based, school-transfer policy violates the Equal Protection Clause of the Fourteenth Amendment. The

district court[1] granted VICC's motion to dismiss. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

E.L. is an African-American boy entering fifth grade. From kindergarten through third grade, he lived in the City of St. Louis, attending Gateway Science Academy, a charter school there. During third grade, his family moved to St. Louis County, in the Pattonville School District. His mother asked Gateway to enroll him in fourth grade even though they no longer lived in the city limits. Gateway declined, providing a copy of its policy that African-American students who live outside the city are not eligible for enrollment.

E.L. sued, alleging equal protection violations. He did not name Gateway as a defendant, but sued only VICC, a non-profit corporation created by a 1999 settlement agreement in the long-standing *Liddell* litigation. The federal lawsuit, filed in 1972 by African-American parents, alleged St. Louis operated segregated schools in violation of the Equal Protection Clause. In 1983, a district court approved a desegregation settlement agreement. *See **Liddell v. Board of Educ. of City of St. Louis, State of Mo.**, 567 F. Supp. 1037 (E.D. Mo. 1983), aff'd in part, rev'd in part, 731 F.2d 1294 (8th Cir. 1984) (en banc).* The agreement—funded by the defendants (the state of Missouri and the City Board of Education)—provided capital improvements of city schools, establishment of city magnet schools, and a voluntary interdistrict transfer plan. The transfer plan, at issue here, allowed African-American students living in the city to transfer to the county, and white students living in the county to transfer to the city.

_____

[1]The Honorable Ronnie L. White, United States District Judge for the Eastern District of Missouri.

In 1996, the state of Missouri moved for a declaration that St. Louis no longer operated a segregated, dual public school system. The court appointed a settlement coordinator to negotiate a resolution. In 1999, the parties settled again. *See Liddell v. Board of Educ. of City of St. Louis*, 1999 WL 33314210, at \*9 (E.D. Mo. Mar. 12, 1999) (approving settlement agreement). The 1999 agreement established VICC to administer the voluntary interdistrict transfer program, including: (1) arranging transportation for students in the transfer program; (2) distributing funding to participating schools; and (3) disseminating information about eligibility requirements (taken primarily from the 1983 agreement). The 1999 agreement permits only the sending and receiving districts to modify the eligibility requirements.

The district court granted VICC's motion to dismiss on four alternative grounds: (1) E.L. lacks standing; (2) he fails to state a claim; (3) the 1999 agreement precludes his claims; and (4) the 1999 agreement releases VICC from liability. E.L. appeals.

## II.

This court reviews "a decision dismissing a complaint for lack of standing de novo, construing the allegations of the complaint, and the reasonable inferences drawn therefrom, most favorably to the plaintiff." *Miller v. City of St. Paul*, 823 F.3d 503, 506 (8th Cir. 2016). "Article III standing is a threshold question in every federal court case." *United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1013 (8th Cir. 2003). Standing requires three elements: (1) "injury in fact"; (2) "a causal connection between the injury and the conduct complained of"; and (3) the likelihood "that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992), *quoting Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976).

## A.

An injury in fact requires that a plaintiff demonstrate he or she is "able and ready" to apply for an educational opportunity and "a discriminatory policy prevents [them] from doing so on an equal basis." *Gratz v. Bollinger*, 539 U.S. 244, 262 (2003), *quoting **Northeastern Fla. Chapter, Associated Gen. Contractors of Am. v. Jacksonville***, 508 U.S. 656, 666 (1993). "It is well established that intent may be relevant to standing in an equal protection challenge." *Id.* at 261. Under *Gratz*, individuals must show that they intend to apply to a school in order to have standing to challenge a discriminatory admissions policy. *See id.* at 260-61. *See also **Shea v. Kerry***, 796 F.3d 42, 50 (D.C. Cir. 2015) ("*Gratz* controls our inquiry. Like [the *Gratz* plaintiff], [the plaintiff here] alleges that he possessed an intent to apply to the position in question."); ***Carroll v. Nakatani***, 342 F.3d 934, 942 (9th Cir. 2003) (applying *Gratz* to require "a legitimate intention to apply").

E.L. claims two injuries in fact by denials of the opportunity to attend Gateway and city magnet schools. The first—denial of the opportunity to attend Gateway—is an injury in fact. E.L. attended there for four years while living in the city. *See* **§ 160.410.1(1) RSMo** (requiring charter schools to enroll "[a]ll pupils resident in the district in which it operates"). The complaint alleges that after moving to the county, he sought to continue his enrollment, but was denied. He is thus "able and ready" to enroll, but prohibited from doing so by an allegedly "discriminatory policy." *Gratz*, 539 U.S. at 262.

The second—denial of the opportunity to attend city magnet schools—is not an injury in fact. While the complaint references magnet schools and VICC's transfer policy for them, it does not allege E.L. is interested in enrolling. To the contrary, his complaint suggests that he is interested in attending only Gateway. His motion for a preliminary injunction confirms this, seeking "to permit E.L. to continue his academic success at Gateway." Citing *Gratz*, E.L. argues that whether he "'actually

-4-

applied' for admission as a transfer student [to a magnet school] is not determinative of his ability to seek injunctive relief in this case." *See id.* at 260-61. This court agrees. However, he must still show some "intent to apply." *Id.* at 261. The mention of magnet schools and the generalized grievance about VICC's transfer policy for them is insufficient to allege an injury in fact.

B.

"[T]here must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (alterations incorporated) (internal quotation marks omitted). "When the injury alleged is the result of actions by some third party, not the defendant, the plaintiff cannot satisfy the causation element of the standing inquiry." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 935 (8th Cir. 2012).

E.L.'s complaint alleges VICC denied him the opportunity to attend Gateway on an equal basis.[2] This allegation is insufficient to confer standing because it erroneously assumes VICC's policy, not Gateway's, was the reason he was denied admission. Throughout briefing and argument, E.L. states: "Because VICC's transfer policy is the only one that discriminates on the basis of race, it logically follows that VICC's policy causes E.L.'s injury—unequal treatment on the basis of race." But Gateway's policy also differentiates based on race: "If address is not found on the

---

[2]E.L.'s brief states: "Gateway administrators told La'Shieka that VICC's transfer policy prevented E.L. from attending the school because of his race." This statement is not supported by the complaint. It states only that he was denied admission "because of his race" and "Gateway officials gave La'Shieka a handout explaining the enrollment requirements."

city site or the zip code is not listed above and the student identifies as African-American, you cannot enroll the student." And Gateway provided a copy of this policy, not VICC's, to support the denial of admission. VICC's policy—which was never cited by Gateway as a reason for denying admission—does not apply to charter schools, which are "independent public school[s]," governed by statute. *See* **§§ 160.400-160.425 RSMo**. Thus, VICC has no administrative or supervisory authority over them.

Still, E.L. argues VICC caused his injury because state law requires charter schools to enroll any student eligible to transfer under the voluntary transfer program. *See* **§ 160.410.1(2) RSMo** (requiring charter schools to enroll "Nonresident pupils eligible to attend a district's school under an urban voluntary transfer program."). Stated differently, E.L. thinks § 160.410.1(2) legally imposes VICC's policy on charter schools. *See* ***Bennett v. Spear***, 520 U.S. 154, 168-70 (1997).

Even if VICC's policy applies to charter schools under § 160.410.1(2), VICC still would not cause E.L.'s injury. VICC does not make or adopt rules or regulations for charter schools; Gateway and the state of Missouri do. The state of Missouri tells Gateway it must admit "[n]onresident pupils eligible to attend a district's school under an urban voluntary transfer program." **§ 160.410.1(2) RSMo**. Assuming § 160.410.1(2) incorporates VICC's policy into state law governing charter schools, the state of Missouri, not VICC, causes the injury. *See* ***Miller***, 688 F.3d at 935-36 (holding plaintiff lacked standing to sue a toxicology lab for "erroneous probation violation reports" because the State of Minnesota, not the lab, caused the injury because it "chose the particular test, ultimately established and implemented the cut-off levels for the probationers it tested, and interpreted the test results"). Similarly, Gateway, not VICC, decided to follow § 160.410.1(2) rather than § 160.410.3, which prohibits charter schools from limiting admission based on race. *See* **RSMo § 160.410.3** ("A charter school shall not limit admission based on race . . . ."). And Gateway, not VICC, denied E.L. admission. E.L.'s argument—that

VICC's transfer policy, by operation of § 160.410.1(2), prevents charter schools from enrolling African-American county residents—is without merit. *See **Bennett***, 520 U.S. at 168-69 (holding that where the injury complained of results from the "independent action of some third party not before the court," standing can still exist, but only if the injury is "produced by determinative or coercive effect" of the party sued).

E.L.'s alleged injury is not "fairly traceable" to VICC. ***Lujan***, 504 U.S. at 560-61.

\* \* \* \* \* \* \*

E.L. lacks standing. The judgment is affirmed.

_____