# United States Court of Appeals
## For the Eighth Circuit
_____

No. 23-1213
_____

Emily Becker; Calli Forsberg; Morgan Stenseth; Maya Tellmann

*Plaintiffs - Appellants*

v.

North Dakota University System

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of North Dakota - Eastern
_____

Submitted: February 13, 2024
Filed: August 14, 2024
_____

Before SMITH, Chief Judge,[1] BENTON, and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

Four students want the University of North Dakota to bring back women's hockey. Two of them did not allege enough for standing. The other two, including one recruited to play there, did. Just their claims can go forward.

_____

[1]Judge Smith completed his term as chief judge of the circuit on March 10, 2024. *See* 28 U.S.C. § 45(a)(3)(A).

I.

For fifteen years, the University of North Dakota women's ice-hockey team "was the most prominent and popular sport among the women's athletic programs." Despite the program's success, the school eliminated it after the 2016–17 season.

A group of four female hockey players wants the program back. Each joined a federal lawsuit alleging that the University of North Dakota violated Title IX, even though none of them were in school there at the time. *See* 20 U.S.C. § 1681(a) (prohibiting covered institutions from "exclud[ing] [anyone] from participation in . . . any education program or activity" on "the basis of sex"). In addition to wanting "to represent a class of all current, prospective, and future female students who are harmed," *see* Fed. R. Civ. P. 23(a), they seek a declaratory judgment that the school violated Title IX and an injunction requiring it to provide female athletes with comparable opportunities, including bringing back the women's hockey program.

The district court dismissed the case for lack of jurisdiction. What was missing, in its view, was a "concrete" injury. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425–26 (2021). On appeal, we address jurisdictional questions like this one de novo. *See Hillesheim v. Holiday Stationstores, Inc.*, 900 F.3d 1007, 1010 (8th Cir. 2018).

II.

Standing to sue under Article III "is the threshold question in every federal case [because it] determin[es] the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). It requires (1) an injury in fact, (2) a causal connection between the injury and the challenged conduct, and (3) a likelihood that a favorable decision will redress the injury. *See Telescope Media Grp. v. Lucero*, 936 F.3d 740, 749 (8th Cir. 2019). To receive prospective relief, a plaintiff must face an "ongoing" or "immediate" injury. *Frost v. Sioux City*, 920 F.3d 1158, 1162

(8th Cir. 2019) (explaining that "past injuries alone are insufficient" (quoting *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011)); *see TransUnion*, 594 U.S. at 431 (requiring plaintiffs to "demonstrate standing . . . for each form of relief that they seek").

A.

The two plaintiffs who have pleaded enough to get over the standing hump are Calli Forsberg and Maya Tellmann. According to the complaint, Forsberg "was *recruited* . . . to play on the University of North Dakota's . . . ice[-]hockey team." (Emphasis added). But "[a]fter [it] eliminated the [program]," she opted for another school with a women's hockey team, Bemidji State University. Tellmann, a two-time state hockey champion, "was accepted as a student" but had no chance to play or try out because, by then, there was no team to join.

Their injury is the continuing denial of an opportunity to compete for the team of their choice. *See Equity in Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 100 (4th Cir. 2011) (explaining that a loss "of participation opportunit[y] for athletes" is an Article III injury). Eliminating the women's hockey team for allegedly discriminatory reasons took away their chance for "the publicly recognized titles and placements that would . . . flow[] from" membership on the University of North Dakota's once-championship-level program. *Soule v. Conn. Ass'n of Schs., Inc.*, 90 F.4th 34, 46 (2d Cir. 2023) (en banc); *see TransUnion*, 594 U.S. at 425–26 (listing "discriminatory treatment" as "sufficiently concrete" for standing).

As injuries go, this one is "concrete" enough to provide standing, in part because both Forsberg and Tellmann allege a definite intent to attend if they can play hockey. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992). The complaint provides specific allegations in support. *See Jones v. Jegley*, 947 F.3d 1100, 1103 (8th Cir. 2020) (explaining that "[a]t this stage, we [must] assume that the allegations in the complaint are true").

Consider Forsberg, who claims that reinstating the hockey program would cause her to "return to the [University of North Dakota]." She otherwise "would have remained," which suggests that she knows what it is like to go to school there and has the academic qualifications for admission.[2] *See E.L. ex rel. White v. Voluntary Interdist. Choice Corp.*, 864 F.3d 932, 936 (8th Cir. 2017) (noting that a plaintiff had standing to challenge a school's policies because he once "attended" and was ready "to enroll"). The University of North Dakota also initially recruited her to play hockey, which allows us to infer that she has the skills to compete. *Cf. Gratz v. Bollinger*, 539 U.S. 244, 251, 262 (2003) (holding that a potential applicant had standing to challenge a school's admissions policies because his credentials were "in the qualified range"). Meeting these requirements once shows that Forsberg is "able and ready" to play if the opportunity arises again. *Pederson v. La. State Univ.*, 213 F.3d 858, 871 (5th Cir. 2000) (holding that an athlete had standing to challenge the elimination of a women's soccer team because she was "'able and ready' to compete"); *see Kuehl v. Sellner*, 887 F.3d 845, 850 (8th Cir. 2018).

Tellmann, who alleges she "would attend" the University of North Dakota if women's hockey returns, is in a similar position. *See Pederson*, 213 F.3d at 871. From the fact that she got in once, just like Forsberg did, we can infer that her academic credentials put her "in the qualified range" for admission. *Gratz*, 539 U.S. at 251. And although she never played hockey for the University of North Dakota, other allegations provide "some evidence" that she is "able and ready" to compete. *Carney v. Adams*, 592 U.S. 53, 65–66 (2020). According to the complaint, she

---

[2]It is true that the University of North Dakota has introduced *evidence* that Forsberg never applied for admission, much less played on its women's hockey team. But the district court mostly stuck to the complaint, and so will we. *See Jones*, 947 F.3d at 1103 (assuming the truth of allegations in a complaint to determine whether a plaintiff had standing). On remand, the school is free to attack jurisdiction on factual grounds, which will allow the court to quickly determine if there is evidentiary support for Forsberg's claimed injury. *See Croyle ex rel. Croyle v. United States*, 908 F.3d 377, 380 (8th Cir. 2018) (describing a "factual attack" as one in which a court "may consider matters outside the pleadings"). In the meantime, however, what she alleges is enough to move on.

"played competitive ice hockey at the high school and club levels and was a member of two state championship teams." *See Pederson*, 213 F.3d at 871 (holding that club athletes had standing to challenge the elimination of a varsity team because they were "able and ready" to "compete[] for a spot"). These achievements "sufficiently differentiate[]" her from others who are interested "in the abstract." *Carney*, 592 U.S. at 64.

The other two Article III standing requirements, causation and redressability, pose even less of a hurdle. Finding a causal link does not require much in the way of imagination: losing the chance to play ice hockey at the University of North Dakota "is fairly traceable to" the decision to eliminate the program. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413 (2013). To remedy their "ongoing" injury, which continues every day they cannot play, they seek a declaratory judgment and an injunction, either of which could lead to reinstatement of the program. *Frost*, 920 F.3d at 1162; *see Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 186 (2000) (holding that a plaintiff has standing if the relief it seeks will "abate[] . . . [ongoing] conduct and prevent[] its recurrence").

*Grandson v. University of Minnesota* is not to the contrary. 272 F.3d 568 (8th Cir. 2001). In that case, we held that a plaintiff challenging the elimination of the women's soccer team at the University of Minnesota had no standing to sue. *See id.* at 574. One problem was that she was "no longer a student." *Id.* (noting that this "is an adequate basis to dismiss an individual Title IX claim for injunctive relief"). But the far bigger one was that she "ha[d] no remaining NCAA eligibility," meaning she could not play regardless of what happened with the lawsuit, at least without a rule change. *Id.*; *see Cook v. Colgate Univ.*, 992 F.2d 17, 20 (2d Cir. 1993) (holding that athletes did not have standing because they "w[ould] graduate before" an injunction could help them). Nothing, however, suggested that one was on the horizon. *See California v. Texas*, 593 U.S. 659, 675 (2021) ("[W]here a causal relation between injury and [a] challenged action depends upon the decision of an independent third party . . . , standing is . . . ordinarily substantially more difficult to

establish[,] . . . [unless] the plaintiff [can] show . . . that third parties will likely react in predictable ways." (citations omitted)).

Forsberg and Tellmann, by contrast, still have "three" and "four remaining years of eligibility," respectively. From a standing perspective, declaratory and injunctive relief can still benefit them.

B.

The other two plaintiffs did not allege nearly as much. One of them, Emily Becker, claims that she "would enroll at the University of North Dakota and play . . . if [it] offered" women's hockey. But the complaint is silent about a number of key facts: did the school ever accept her, does she meet the minimum standards for admission, and is she good enough to compete for a spot on the team? *See Gratz*, 539 U.S. at 262 (evaluating whether a plaintiff was "qualifi[ed]"). It is possible, in other words, that her "asserted injur[y] [is] . . . the result of [her] own [credentials]" or the standards set by admissions and athletic staff. *Miller v. Thurston*, 967 F.3d 727, 735 (8th Cir. 2020); *see Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 936 (8th Cir. 2012) (putting the burden on the plaintiff to show that any "alleged injuries are a direct consequence of" the defendant's actions).

The complaint tells us even less about Morgan Stenseth. We know she played hockey and "was accepted at the University of North Dakota" at one point, but that is it. We do not know why she did not attend, nor is there any "general expression of intent" to go there in the future. *Jones*, 947 F.3d at 1103; *cf. Lujan*, 504 U.S. at 564 (explaining that an intent to act "some day" does not provide standing). She does not even allege an injury-in-fact, much less one that a decision about the future of women's hockey at the University of North Dakota could remedy.[3] *Cf. Steger v.*

---

[3]The plaintiffs have also moved to supplement the record on appeal with materials from a previous Title IX lawsuit against the University of North Dakota. No one, however, identifies a "compelling reason" to deviate from "the general rule

*Franco, Inc.*, 228 F.3d 889, 893 (8th Cir. 2000) (holding that someone with no "intent" to visit cannot claim an injury from a lack of ADA-compliant facilities).

III.

We accordingly reverse and remand in part, but otherwise affirm.

_____

that [we] only consider evidence contained in the record before the district court." *Bell v. Pfizer, Inc.*, 716 F.3d 1087, 1092 (8th Cir. 2013).