RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 24a0249p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

GLENN BOWLES; KENNETH FRANKS; ROBERT GARDNER,

*Plaintiffs-Appellants,*

*v.*

GRETCHEN WHITMER; DANA NESSEL,

*Defendants-Appellees.*

No. 24-1013

───────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:22-cv-11311—Gershwin A. Drain, District Judge.

Decided and Filed: November 7, 2024

Before: STRANCH, THAPAR, and MURPHY, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ON BRIEF:** Marc M. Susselman, Canton, Michigan, for Appellants. Mark G. Sands, Kellie L. McGuire, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, East Lansing, Michigan, for Appellees.

───────────────

## OPINION

───────────────

MURPHY, Circuit Judge. The Judiciary Act of 1789 required Justices of the Supreme Court to "ride circuit" by traveling great distances to resolve cases on the new circuit courts. *See* Pub. L. No. 1-20, § 4, 1 Stat. 73, 74–75. Losing litigants could then appeal their decisions to the Supreme Court. *See id.* § 13, 1 Stat. at 81. Some Justices raised "constitutional and practical" objections to this circuit-riding duty. David P. Currie, *The Constitution in Congress: The Federalist Period* 54 (1997). Worried about appearances of bias if the full Court affirmed a

colleague, they wrote to President Washington that observers might think "mutual interest" on the Court "had generated mutual civilities and tendernesses injurious to right." 3 Joseph Story, *Commentaries on the Constitution of the United States* § 1573, at 440 n.1 (1833). But the Court later upheld the constitutionality of circuit riding, reasoning that the practice's continuation for a decade had "fixed" the Constitution's "construction." *Stuart v. Laird*, 5 U.S. 299, 309 (1803).

The plaintiffs in this case seek to reopen this debate. Michigan's legislature has waived the State's sovereign immunity by creating a specialized court, the Court of Claims, in which plaintiffs may sue the State. The Court of Claims now consists of judges from the Michigan Court of Appeals. So when parties appeal judgments of the Court of Claims, other appellate judges on the Court of Appeals review their colleagues' decisions. According to the plaintiffs, this practice violates the Fourteenth Amendment. Our resolution of their challenge must start with a different letter that the Justices wrote to President Washington. When he asked for their legal guidance on a foreign-affairs matter, they responded that they could "not issue advisory opinions" outside an actual case. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 378–79 (2024) (citing 13 Papers of George Washington: Presidential Series 392 (Christine Sternberg Patrick ed. 2007)). Because the plaintiffs here seek such an opinion about the constitutionality of the Court of Claims, we agree with the district court that they lack Article III standing. We affirm.

I

This case reaches us at the pleading stage. At this stage, we must accept a complaint's well-pleaded factual allegations as true. *Lewis v. Acuity Real Est. Servs., LLC*, 63 F.4th 1114, 1116 (6th Cir. 2023). But we may disregard its conclusions of law. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under this dichotomy, we will independently summarize Michigan law governing suits against the State before turning to the complaint's alleged facts.

A

Michigan courts have long granted the State sovereign immunity from suit as a common-law matter, so no one may sue the State without its consent. *Ross v. Consumers Power Co.*, 363 N.W.2d 641, 650 (Mich. 1984) (per curiam), *superseded in part by statute as recognized by*

*Bradley v. City of Ferndale*, 148 F. App'x 499, 511 (6th Cir. 2005). The Michigan legislature historically granted this consent to sue in individual bills passed case-by-case. *See id.* When this process proved unwieldy, the legislature delegated this consent-giving power to a state board. *See id.* at 650–51; *Okrie v. Michigan*, 857 N.W.2d 254, 258 (Mich. Ct. App. 2014) (per curiam).

In 1939, though, the legislature changed course. The Michigan Court of Claims Act broadly waived the State's sovereign immunity. 1939 Mich. Pub. Acts 247, 247–53 (No. 135) (codified as amended at Mich Comp. Laws §§ 600.6401–600.6475). This Act granted a general consent to sue the State in the newly created Court of Claims. *See id.* at 249.

The makeup of the Court of Claims has evolved. *See Okrie*, 857 N.W.2d at 258–59. Since 2013, it has consisted of four judges from the Michigan Court of Appeals. Mich. Comp. Laws § 600.6404(1). The Michigan Supreme Court appoints these judges to two-year terms. *Id.* § 600.6404(1), (6). And the Michigan Court of Appeals has rejected claims that the state constitution bars the judges from serving in these dual roles. *Okrie*, 857 N.W.2d at 261–74.

The Court of Claims has "exclusive" jurisdiction to hear claims for relief "against the state or any of its departments or officers[.]" Mich. Comp. Laws § 600.6419(1)(a). If the plaintiff wrongly files such a suit in another court, that court must transfer it to the Court of Claims. *Id*. § 600.6404(3). The Court of Claims presumptively operates like other trial courts (called "circuit courts" in Michigan). *Id*. § 600.6422(1). So, for example, a plaintiff may appeal a Court of Claims judgment "to the court of appeals in all respects as if the court of claims was a circuit court." *Id*. § 600.6446(1); *see id.* § 600.308. But the law includes one notable exception to this presumption: the Court of Claims conducts only bench trials, not jury trials. *Id*. §§ 600.6421(1), 600.6443. If the plaintiff correctly asserts a statutory right to a jury trial on a claim, the presiding Court of Claims judge must transfer this claim to the proper trial court. *See id.* § 600.6421(1).

B

Glenn Bowles, Kenneth Franks, and Robert Gardner each have litigated cases against Michigan agencies and employees in the Court of Claims. None of the cases has succeeded.

1. *Bowles and Franks*. Bowles served as a police officer for decades. Compl., R.1, PageID 3, 6. During much of this time, the Macomb Community College employed him as an "adjunct instructor" in its Macomb County Police Academy. *Id.* Franks worked alongside Bowles as another "adjunct instructor" at this academy. *Id.*, PageID 3.

While Bowles trained a new class in 2019, several cadets accused him of sexual harassment. *Id.*, PageID 6, 8–9. Danny Rosa of the Michigan Commission on Law Enforcement Standards (what we will call the "Commission") started to investigate. *Id.*, PageID 7. This investigation led the Macomb Community College to fire Bowles. *Id.*, PageID 9. The investigation also uncovered harassment complaints against Franks. *Id.*, PageID 10. The Commission required him to attend sexual-harassment training. *Id.* When Franks refused, the college barred him from teaching future cadets. *Id.*

In December 2020, Bowles challenged his termination in a prior federal lawsuit. *Id.*, PageID 11. The district court declined to exercise supplemental jurisdiction over some of Bowles's state-law claims. *See Bowles v. Macomb Cmty. Coll.*, 558 F. Supp. 3d 539, 543 (E.D. Mich. 2021). It rejected most of his other claims at the pleading stage. *See id.* at 542, 546–56. Bowles later stipulated to dismissal of his remaining claims with prejudice.

Bowles, now joined by Franks, then turned to state court. The two officers sued the Commission and Rosa over the same personnel decisions in a circuit court. Compl., R.1, PageID 12. The circuit court transferred these claims to the Court of Claims. *Id.* That court dismissed this suit. *See Bowles v. Mich. Comm'n on Law Enf't Standards*, 2023 WL 7979951, at *2 (Mich. Ct. App. 2023) (per curiam). The Michigan Court of Appeals affirmed. *See id.* at *9. And the Michigan Supreme Court denied discretionary review. *See Bowles v. Mich. Comm'n on Law Enf't Standards*, 3 N.W.3d 819, 819 (Mich. 2024) (mem.).

2. *Gardner*. Gardner sought to obtain his doctorate from Michigan State University's College of Agriculture. Compl., R.1, PageID 14. During his time as a student, he advocated for migrant workers and promoted their unionization. *Id.* This advocacy did not sit well with the university's administrators because the college received substantial funding from corporate farmers. *Id.* Gardner claims that these administrators have held a "30-year vendetta against

him" because of his migrant-worker advocacy. *Id.* They eventually expelled him from the school on the (allegedly pretextual) ground that he exceeded the 8-year limit to obtain a Ph.D. *Id.* They also sent the campus police to kick him out of his office. *Id.* A court convicted him of criminal trespassing because he refused to leave. *Id.* Since Gardner's expulsion, the administrators have blacklisted him from obtaining any future employment at the university. *Id.*, PageID 15.

Gardner sued the university and the administrators in a circuit court. *Id.*, PageID 12. The court transferred his claims to the Court of Claims. *Id.* Yet his complaint included discrimination claims under Michigan's Elliott-Larsen Civil Rights Act. *Id.* Because Gardner had a right to a jury trial for these claims, the Court of Claims transferred them back to the circuit court but retained jurisdiction over the rest of his suit. *Id.*, PageID 13. The Court of Claims has since dismissed the claims pending there. *See Gardner v. Mich. St. Univ.*, 2022 WL 17998121, at *2 (Mich. Ct. App. Dec. 29, 2022) (per curiam). And the Michigan Court of Appeals affirmed. *See id.* at *7. Yet that court partially reversed the circuit court's dismissal of the still-pending discrimination claims. *See Gardner v. Mich. St. Univ.*, 2024 WL 2868668, at *12 (Mich. Ct. App. June 6, 2024).

C

In June 2022, while these suits progressed through the state courts, Bowles, Franks, and Gardner filed this federal case challenging Michigan's Court of Claims Act. Compl., R.1, PageID 1. The three plaintiffs sued Michigan's Governor and Attorney General in their official capacities. *Id.*, PageID 1, 3. As relevant now, they alleged that the Court of Claims Act violated the Fourteenth Amendment's Due Process and Equal Protection Clauses because it required the Court of Claims to consist of judges from the Court of Appeals. *Id.*, PageID 15–17, 19–20. This composition allegedly violated due process because it required appellate judges to review their colleagues' work and so deprived the litigants of a "neutral and unbiased decision-maker" on appeal. *Id.*, PageID 16. And the composition allegedly violated equal protection because plaintiffs who may sue in the circuit courts do not face this same potential for biased review. *Id.*, PageID 19. Next, the complaint alleged that the Court of Claims Act violated equal protection because litigants in the Court of Claims (unlike litigants in the circuit courts) cannot obtain a jury

trial.  *Id.*, PageID 20.  As for their remedies, Bowles, Franks, and Gardner requested a declaratory judgment finding the Court of Claims Act unconstitutional and a permanent injunction "enjoining its future enforcement[.]"  *Id.*, PageID 17, 20–21.

The Governor and Attorney General moved to dismiss the complaint.  The district court granted their motion.  *Bowles v. Whitmer*, 2023 WL 2719427, at *6 (E.D. Mich. Mar. 30, 2023). The court first held that Bowles, Franks, and Gardner lacked standing because they failed to allege how the Court of Claims Act had injured them.  *See id.* at *3.  The court next held that claim preclusion barred Bowles's challenge because he should have raised it in his earlier federal suit.  *See id.* at *3–4.  It lastly concluded that the claims failed on their merits.  *See id*. at *4–6.

Bowles, Franks, and Gardner appealed.  We review the district court's decision to dismiss their complaint de novo.  *See Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 535 (6th Cir. 2021).  In defense of that decision, Michigan's Governor and Attorney General renew most of the arguments that they raised in the district court.  But we need not—indeed, cannot— proceed past their standing argument.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).  None of the three plaintiffs plausibly alleged his standing to challenge the Michigan Court of Claims Act.  *See Ass'n of Am. Physicians & Surgeons*, 13 F.4th at 543–44.

II

The Constitution grants federal courts jurisdiction to resolve "Cases" or "Controversies." U.S. Const. art. III, § 2, cl. 1; *Steel Co.*, 523 U.S. at 102–04.  This textual limit on the courts implements the separation of powers by shielding state and federal legislatures from standalone judicial oversight over every new law that they pass.  *See California v. Texas*, 593 U.S. 659, 673 (2021); *Ass'n of Am. Physicians & Surgeons*, 13 F.4th at 536.  The Supreme Court has interpreted the limit to adopt a three-part "standing" test.  *See Ass'n of Am. Physicians & Surgeons*, 13 F.4th at 536–37.  To satisfy this test, plaintiffs must identify a "concrete and particularized" injury that has already occurred or will imminently occur.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  They next must show that this injury is "fairly traceable" to the defendant's conduct.  *California*, 593 U.S. at 668–69 (citation omitted).  They then must

show that the relief they seek "is likely to redress that injury." *Uzuegbunam v. Preczewski*, 592 U.S. 279, 285 (2021).

Potential litigants cannot satisfy these three standing elements "in gross" by combining the injury element for one claim with, say, the redressability element for another claim. *Davis v. Colerain Township*, 51 F.4th 164, 171 (6th Cir. 2022) (citation omitted); *see Murthy v. Missouri*, 144 S. Ct. 1972, 1988 (2024) (citation omitted). They instead must satisfy the three-part test for each injury that they allege, for each defendant that they sue, and for each remedy that they seek. *See Fox v. Saginaw County*, 67 F.4th 284, 293 (6th Cir. 2023); *Davis*, 51 F.4th at 171.

This rule manifests itself in various ways. To begin, those seeking a federal venue must show a proper connection between their injury and the *defendant*. *See Murthy*, 144 S. Ct. at 1995; *California*, 593 U.S. at 669–70. Plaintiffs thus lack standing to sue a defendant if their injury arose "from the independent action of some third party not before the court." *Murthy*, 144 S. Ct. at 1986 (citation omitted); *see All. for Hippocratic Med.*, 144 S. Ct. at 382–85. And they lack standing to challenge a law in the abstract. *See Whole Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021). Plaintiffs instead must sue the particular defendant with the power to "*enforce*[]" the challenged law against them. *California*, 593 U.S. at 670.

In addition, plaintiffs must show a proper connection between the injury and the *remedy*. While a past injury might create standing to seek damages, it generally does not create standing to seek an injunction or declaratory judgment. *See Davis*, 51 F.4th at 171; *see also Diei v. Boyd*, __ F.4th __, 2024 WL 4211967, at *2 (6th Cir. Sept. 17, 2024). These forward-looking preventative remedies will do nothing to redress an already-occurred injury. *See Murthy*, 144 S. Ct. at 1987. To seek these remedies, then, plaintiffs must show that they face a potential future harm that is "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013); *see Christian Healthcare Ctrs. v. Nessel*, __ F.4th __, 2024 WL 4249251, at *6 (6th Cir. Sept. 20, 2024).

Bowles, Franks, and Gardner have not satisfied these elements. They allege two types of injuries. But they fail to meet all of standing's elements for either type.

*Injury One*: On appeal, the three plaintiffs rely on the "concrete and particularized" harms they suffered outside litigation. Appellant's Br. 39–41. The Macomb Community College fired Bowles from its police academy. Compl., R.1, PageID 8–9. The College barred Franks from working at this academy too. *Id.*, PageID 10. And Michigan State University denied Gardner employment opportunities after expelling him from its doctoral program. *Id.*, PageID 14–15. The parties do not dispute that these "traditional tangible harms" qualify as the types of "concrete" injuries that parties can raise in court. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021).

But the plaintiffs do not attempt to satisfy the other two standing elements for these injuries. For starters, how are the injuries "fairly traceable" to any actions by the defendants that they sued: Michigan's Governor and Attorney General? *See California*, 593 U.S. at 669. Their complaint pleads nothing to suggest that these defendants played any role in the complained-of personnel matters. Rather, these injuries trace back to the "independent" decisions of parties not before the court: the Commission, Rosa, and the administrators at Macomb Community College and Michigan State University. *See Murthy*, 144 S. Ct. at 1986 (citation omitted).

Next, how will the "requested relief" remedy these injuries? *See California*, 593 U.S. at 669 (citation omitted). Since the harms occurred in the past, Bowles, Franks, and Gardner presumably could have sought "damages" to satisfy standing's redressability element. *See Davis*, 51 F.4th at 171. But they sued the Governor and Attorney General in their official capacities—not their personal capacities—so sovereign immunity would bar a damages request. Compl., R.1, PageID 1, 3; *see Kentucky v. Graham*, 473 U.S. 159, 165–67 (1985). The plaintiffs instead sought declaratory and injunctive relief. Compl., R.1, PageID 17, 20–21. Admittedly, one could describe these injuries as sufficiently "forward-looking" to leave open the possibility for some prospective relief. *See Davis*, 51 F.4th at 171. Bowles, Franks, and Gardner cannot work at Macomb Community College or Michigan State each day on an "ongoing" basis. *Cf. Becker v. N.D. Univ. Sys.*, 112 F.4th 592, 597 (8th Cir. 2024). But they did not seek an injunction ordering their "reinstatement" to past positions. *See Tessanne v. Child.'s Hosp. Med. Ctr. of Akron*, 2024 WL 1435306, at *2 (6th Cir. Apr. 3, 2024); *Walsh v. Nev. Dep't of Hum. Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006). They sought an injunction to stop something else: the

use of the Court of Claims to adjudicate the claims of litigants who sue the State.  Compl., R.1, PageID 17, 20–21.  The requested injunction, then, would do nothing to "redress" the employment-related injuries.  *See Uzuegbunam*, 592 U.S. at 285.

*Injury Two*: In the district court, the plaintiffs relied on other injuries: the alleged violation of their constitutional rights.  They assert that the Court of Claims Act violates the due-process rights of litigants who sue in that court because the Act creates the risk of biased decisionmaking on appeal.  And they assert that the Act violates the equal-protection rights of these litigants because (unlike other plaintiffs) they must choose this allegedly biased venue and forgo a jury trial.  These "intangible" procedural and equal-protection harms may well qualify as sufficiently "concrete."  *See TransUnion*, 594 U.S. at 425; *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993); *Doster v. Kendall*, 54 F.4th 398, 416–17 (6th Cir. 2022), *vacated as moot* 144 S. Ct. 481 (2023).  But we need not decide this point.

Why?  Bowles, Franks, and Gardner have again failed to meet standing's causation element for these alternative injuries.  They fare no better when we ask again whether these harms are "fairly traceable" to Michigan's Governor and Attorney General.  *See California*, 593 U.S. at 669.  The plaintiffs seek an injunction "enjoining" the "future enforcement" of the Court of Claims Act.  Compl., R.1, PageID 17, 20–21.  But they fail to explain how either defendant has enforced—or will enforce—this Act against them.  *See California*, 593 U.S. at 670–71.  To the contrary, the Commission and Michigan State defendants seemingly enforced the Act by filing a notice to transfer the suits that Bowles, Franks, and Gardner filed to the Court of Claims.  Compl. R.,1, PageID 12.  And if anything, the Michigan courts themselves enforce this Act because they have a "*sua sponte*" duty to ensure their subject-matter jurisdiction even if a litigant does not flag the issue.  *See Somberg v. McDonald*, __ F.4th __, 2024 WL 3964004, at *2 (6th Cir. Aug. 28, 2024); *see also O'Connell v. Dir. of Elections*, 891 N.W.2d 240, 245 (Mich. Ct. App. 2016).  At day's end, though, we need not decide who "enforces" this Act for standing purposes.  We need only decide that the sued defendants have not done so here.  *See California*, 593 U.S. at 670–71.

* * *

The district court held that the complaint failed to invoke its subject-matter jurisdiction (because the plaintiffs lacked standing) and that the complaint failed to state a claim (because their constitutional theories failed on the merits). *See Bowles*, 2023 WL 2719427, at *3–6. The court thus seemingly dismissed the suit both without prejudice (on jurisdictional grounds) and with prejudice (on the merits). *See Davis*, 51 F.4th at 176. Because we agree with the district court's jurisdictional ruling, we proceed no further. *See Steel Co.*, 523 U.S. at 94. We thus limit the court's judgment to a jurisdictional (without prejudice) dismissal. *See Davis*, 51 F.4th at 176 (quoting *Perna v. Health One Credit Union*, 983 F.3d 258, 274 (6th Cir. 2020)).

As modified, the judgment is affirmed.